## STANDARD ACC. INS. CO. v. COLLINGDALE STATE BANK.*

### No. 5796.

Circuit Court of Appeals, Third Circuit.

July 20, 1936.

C. B. Wagoner, G. A. Troutman, J. W. McWilliams, F. B. Bracken, and C. S. Wesley, all of Philadelphia, Pa., for appellant.

Albert J. Williams, of Media, Pa., and Clarence E. Hall and Joseph W. Henderson, both of Philadelphia, Pa. (Orr, Hall & Williams, of Philadelphia, Pa., of counsel), for appellee.

Before DAVIS and THOMPSON, Circuit Judges, and FAKE, District Judge.

*Rehearing denied Sept. 23, 1936.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania. The appellee brought suit in assumpsit against the appellant on a fidelity schedule bond. The appellant's bond purported to protect the appellee against the dishonesty and misappropriation of its employees, among whom was the appellee's cashier, John S. Ward. Ward misappropriated a sum in excess of $9,500 during the period beginning December 3, 1929, and expiring August 28, 1930, and further misappropriated funds in excess of $9,500 during the period beginning August 28, 1930, and ending August 28, 1931. The appellant alleged that by the terms of the bond the coverage was noncumulative, and that therefore its liability was restricted to a total of $9,500. The appellee maintained that the appellant had undertaken to insure the fidelity of Ward for two separate terms, that the contracts were separate and distinct, and that the liability was cumulative. A jury trial was waived by written stipulation filed of record. The District Court entered judgment for the appellee, assessing $9,500 as insurance for the first period, $9,500, for the second period, and interest on both amounts.

The question presented is whether the parties provided for a single liability or for successive (cumulative) liabilities. The answer to this question must be sought in the bond and schedules which comprise the contract between the parties, for in the bond and schedules can be found the intention of the parties. The bond and pertinent schedules are set out in the margin.* We note that the bond is dated August 28, 1929, and that no expiration date is given. The grounds upon which the insurance may be terminated are set out in clause 5 of the bond. The schedules, however, contain a definite termination date. The first schedule which purports to insure the fidelity of the defaulting employee is dated December 3, 1929, and by its terms expires August 28, 1930. The subsequent schedule which carries Ward's name is dated August 28, 1930, and by its terms expires August 28, 1931. Neither the bond nor the schedules contain any statement that the liability was to be noncumulative. From these facts we conclude that the parties meant the fidelity of Ward to be insured from December 3, 1929, to August 28, 1930, and then again from August 28, 1930, to August 28, 1931.

We are the more persuaded to this view by the improbability that a practical business concern, such as the appellee herein, would pay one company two premiums for a single right of recovery if it could by payment of the same sum to two separate insurance carriers procure recoverable insurance for two periods.

The numerous cases cited by the appellant to sustain its contention that the bond in suit is a noncumulatve undertaking may be distinguished. In Brulatour v. Ætna Casualty & Surety Co. (C.C.A.) 80 F.(2d) 834, the Second Circuit construed the fidelity bond and its successive schedules as a contract which did not permit cumulative liability. It based this conclusion upon a number of factors, mainly: There was nothing to indicate that the original contract set up by the bond ever ended; the yearly schedules all expressly stated that the coverage was under the original bond; the revised schedules contained the provision that the liability was noncumulative; the assured did not object to the noncumulative provision. The court differentiated Maryland Casualty Co. v. First Nat. Bank, 246 F. 892 (C.C.A. 5), and Florida Cent. & P. R. Co. v. American Surety Co., 99 F. 674 (C.C.A. 2), on the ground that the bond and schedules in those cases showed yearly expiration dates.

In Leonard v. Ætna Casualty & Surety Co. (C.C.A.) 80 F.(2d) 205, the Fourth Circuit in a well-considered opinion affirmed a decision of the District Court for the Western District of South Carolina which held that the bond in suit provided for noncumulative liability. The Circuit Court pointed out that the instrument to be construed did not specify a definitely limited period terminating on a certain date and that the schedules did not contain a provision that the fidelity of the employee was insured for a period ending on a definite date. The other cited cases may be distinguished on similar grounds. Our conclusion is that in the instant case the parties intended that a separate and distinct liability should arise for each period and that the sum total of the liabilities should be cumulative.

The question as to whether the appellee breached the condition of the bond by failure to give notice "as soon as possible after becoming aware of any act committed by any Employee which may be made the basis

---

* See note at end of this opinion.

of claim hereunder" must necessarily be decided against the appellant's contention in view of the fact findings of the judge to whom the cause had been tried without a jury.

Judgment affirmed.

Note.—

Individual or Schedule
(Special Form—Revised)
Standard
Accident Insurance Company
Detroit, Michigan

The Standard Accident Insurance Company (hereinafter called Surety), in consideration of an agreed premium, binds itself to pay to Collingdale State Bank, 720 Parker Avenue, Collingdale, Pennsylvania ...... (hereinafter called Employer), within thirty days after proof thereof, the amount of any pecuniary loss which any Employee named in the schedule hereto attached or added thereto as hereinafter provided, may, while in any position and at any location in the service of the Employer, alone or in collusion with others, cause to the Employer, not exceeding, however, the amount set opposite the name of such Employee, through any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction or wilful misapplication committed during the continuous term commencing with the date hereof, and while this bond is in force as to such Employee, and discovered before the expiration of twenty-four months from the termination of this bond as an entirety or as to such Employee, whichever shall first happen.

This bond is executed and accepted subject to the following conditions:

1. If written for a definite term, the suretyship hereunder may be continued in force from time to time by a continuation certificate executed by the Surety.

2. Other Employees may be added to the said schedule or the suretyship on any Employee thereon, or that may be added thereto, may be increased or decreased by written notice to the Surety by the Employer and accepted in writing by the Surety, such acceptance to set forth the amount of suretyship and the date from which effective.

In the event of any Employee hereunder being covered for separate periods in like or different amounts, the maximum liability of the Surety, for all defaults of such Employee occurring during two or more such periods, shall not exceed a sum equal to the largest amount of suretyship in force as to such Employee during any period within which any such default shall have occurred; nor shall the suretyship granted for one period cover defaults occurring within some other period.

3. The Employer shall give notice, by registered mail, to the Surety at its Home Office, Detroit, Michigan, as soon as possible after becoming aware of any act committed by any Employee which may be made the basis of claim hereunder, and, within ninety days after date of said notice, shall file with the Surety its itemized claim hereunder, duly sworn to, and, if required by the Surety, shall produce in support thereof at the office of the Employer, all books, vouchers and other evidence in the Employer's possession. No action or proceeding at law or in equity shall be brought to recover any sum hereunder unless commenced and process served on the Surety within a period of fifteen months next after notice of claim shall have been given as hereinbefore provided.

4. In case of recovery, whether made by the Employer or the Surety, on account of any loss hereunder from any source (other than suretyship and other than reinsurance, collateral or indemnity taken by the Surety for its own benefit), the net amount of such recovery, less the actual cost and expense of making same, shall be applied to reimburse the Employer in full for such loss, and the excess, if any, shall be paid to the Surety, and the Employer shall execute all papers required by the Surety, and render all assistance, not pecuniary, to secure to the Surety, the rights herein provided for.

5. This bond shall terminate (a) as to any Employee upon leaving for any reason the service of the Employer or upon discovery by the Employer of any act which may be made the basis of any claim hereunder, or (b) as an entirety or as to any employee upon thirty days' notice in writing from the Surety to the Employer or upon notice in writing from the Employer specifying the date of cancellation. In case of termination, no claim having been made thereunder, the Surety shall upon written demand, refund the unearned premium therefor, such unearned premium to be repaid the Surety in the event of payment of loss thereunder.

6. If the Employer be a corporation, the acts or knowledge of any officer or director not in collusion with the defaulting Employee, shall be the act or knowledge of the Employer within the meaning hereof. If any limitation herein for giving notice, filing claim or bringing suit is prohibited or made void by any law controlling the construction hereof, such limitation shall be deemed to be amended so

as to be equal to the minimum period of limitation permitted by such law.

Signed, sealed and dated this 28th day of August, 1929.

Standard Accident Insurance Company

By......................

Attorney-in-Fact.

### Schedule

| Name | Position | Location | Amount | Annual Premium |
|------|----------|----------|--------|----------------|

See Schedule Attached

Note:—Fill in above space if only one individual covered—if more than one, attach schedule list form B–98.

Form B–524. Ed. 4–28.

Acceptance Notice on Change of Schedule of Employees attached to Schedule Bond No. SA–48963: F–903.

Standard
Accident Insurance Company
Detroit, Michigan

Change Notice No. 2

December 3, 1929.     19

The Standard Accident Insurance Company hereby acknowledges receipt of request to make the following additions to and/or deductions from the Schedule of Employes attached to Schedule Bond No. SA–48963: F–903 given Collingdale State Bank, Collingdale, Penna. expiring August 28, 1930, subject to the terms, limitations and conditions therein set forth.

### ADDITIONS.

| Effective Date | Item No. | Name | Position | Location | Amount | Premium Debit |
|------|------|------|----------|----------|--------|---------------|
| 12–4–29 | 4. | Ethel G. Neale, | Stenographer and Clerk | Collingdale, Pa. | $4,500. | $13.17 |
| 12–4–29 | 5. | William J. Briddes | Watchman | Collingdale, Pa. | $1,000. | $ 2.92 |
| 12–4–29 | 6. | John S. Ward, | Cashier | Collingdale, Pa. | $9,500. | $27.80 |
| 12–4–29 | 7. | George G. Lyle, Jr. | Clerk | Collingdale, Pa. | $ 500. | $ 1.46 |
| | | | | Total | $15,500. | $45.35 |

### DEDUCTIONS

| Date Terminated | Item No. | Name | Position | Location | Amount | Premium Credit |
|------|------|------|----------|----------|--------|----------------|

Accepted, Standard Accident Insurance Company.

By......................

Attorney-in-Fact

Attest:

......................

Attorney-in-Fact

Form B103 Ed. July 1926—8M–7–29

Fidelity Schedule Bond
issued by the

Standard Accident Insurance Company
In favor of Collingdale State Bank, Collingdale, Pa.

Suretyship $15,500.00.     Premium $62.00

The premium on Schedule Bond No. SA–48963., for the term beginning on the 28th day of August, 1930, and ending on the 28th day of August, 1931 stated above. It is understood that the employees covered by said bond as of this premium date are in accordance with the following schedule.

Dated this 27th, day of June, 1930.

Standard Accident Insurance Company

By......................

Attorney-in-Fact.

................

Attorney-in-Fact.

### SCHEDULE

| Item No. | Name | Position | Location | Amount of Bond | Premium |
|------|------|----------|----------|----------------|---------|
| 1. | Charles Schmeid. | Clerk. | Collingdale, Pa. | $500.00 | $2.00 |
| 3. | Arthur Jasper. | Janitor | Collingdale, Pa. | $500.00 | $2.00 |
| 4. | Ethel G. Neale. | Stenographer and Clerk. | Collingdale, Pa. | $4,500.00 | 18.00 |
| 6. | John S. Ward. | Cashier. | Collingdale, Pa. | $9,500.00 | 38.00 |
| 8. | Walter G. Behrendt | Clerk. | Collingdale, Pa. | $500.00 | 2.00 |
| | Total | | | $15,500.00 | $62.00 |